**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

KING ALLAH JAMES,

      Plaintiff,

vs.

CERRO GORDO COUNTY JAIL, DOUG
MENNEN, JEFF BULAND, ANDREW
STEENBLOCK, KEVIN PALS, NICOLLE
MEDINA, and BOB BARKER
COMPANY, INC.,

      Defendants.

No. 17-CV-3039-CJW

**ORDER**

———————————

TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 2

II.    PROCEDURAL HISTORY ................................................................ 2

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ......................... 3

IV.   SUMMARY JUDGMENT STANDARD ............................................... 5

V.    ANALYSIS ...................................................................................... 7

     A.    Plaintiff's Failure to Resist ........................................................ 7

     B.    Exhaustion Requirement ............................................................ 8

     C.    Civil Rights Claims under 42 U.S.C. § 1983 .............................. 10

     D.    Merits of Plaintiff's Excessive Use of Force Claims....................... 12

     E.    Merits of Plaintiff's Retaliation Claims ...................................... 14

     F.      Merits of Plaintiff's Cruel and Unusual Punishment and
             Conditions of Confinement Claims ............................................... 15

     G.     Defendants Steenblock and Sheriff Pals ...................................... 20

     H.     Qualified Immunity ............................................................ 20

VI.    CONCLUSION ...................................................................... 21

## *I.*    *INTRODUCTION*

This matter is before the Court on defendants' second motion for summary judgment. (Doc. 81).

## *II.*    *PROCEDURAL HISTORY*

This case has a complicated history which the Court has discussed in other orders. (*See* Doc. 47, Doc. 56, Doc. 69 & Doc. 80). In short, pursuant to the Court's order filed April 18, 2017, (Doc. 47), the only remaining claims in this case are those set out in the supplemental complaint. (Doc. 13). As set forth by the Court in its order filed May 11, 2018, (Doc. 56), the remaining claims to be resolved in this case (from the supplemental complaint) are generally summarized as follows:

    1. February 22, 2017, incident (Mennen threat to cause harm and physical assault) (docket no. 13 at 1);

    2. April or May 2017 incident (Mennen pushing on way to cellblock) (docket no. 13 at 1);

    3. June 1, 2017,[1] incident (tight restraints and van ride with Mennen) (docket no. 13 at 2);

---

[1] The supplemental complaint indicates that this incident may have occurred in March 2017, not June 1, 2017 (Doc. 13, at 2). The date of this incident is of no consequence, however, as it does not change the outcome of this summary judgment motion.

4. early June 2017 incident (housing in room with light left on for two weeks) [2] (docket no. 13 at 2-3); and

5. April 16-21, 2017, incident (housing in padded cell for five days) (docket no. 13 at 3) (collectively the Remaining Claims).

(Doc. 56, at 2.)

On September 24, 2018, the case was transferred from Honorable Linde R. Reade to the undersigned judge. Defendants have now filed a second summary judgment motion regarding the Remaining Claims. Plaintiff did not file a resistance.

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

The Court finds the facts set forth below to be undisputed for purposes of defendants' motion for summary judgment:[3]

At the time of the events giving rise to this claim, plaintiff was an inmate at the Cerro Gordo County Jail in Mason City, Iowa; Kevin Pals was the elected Sheriff of Cerro Gordo County; Andrew Steenblock was (and is) the Cerro Gordo County Jail Administrator; and Doug Mennen was a Cerro Gordo County Jail correctional officer. (Doc. 81-1, at ¶¶ 1-2).

---

[2] It is unclear from the supplemental complaint whether this incident occurred in June 2017 or a few months earlier (Doc. 13, at 2-3). The exact duration the lights were illuminated—a few days to two weeks—is also unclear. These uncertainties are of no consequence, however, as they do not change the outcome of this summary judgment motion.

[3] These facts are set forth in defendants' statement of undisputed facts (Doc. 81-1) and are supported by evidence contained in defendants' appendix. (Doc. 81-3). They are deemed undisputed by operation of Local Rule 56(b), which provides that "[t]he failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." L.R. 56(b).

On or about October 4, 2017,[4] plaintiff filed a supplemental complaint in which he raised further allegations against Correctional Officer Mennen. (*id.* at ¶ 3; Doc. 13). At no time, however, did plaintiff ever submit any written grievances or any other type of report whatsoever to Jail Administrator Steenblock regarding any of the matters complained of as set forth in his supplemental complaint. (Doc. 81-1, at ¶ 3; Doc. 81-3, at 22-23).

On June 12, 2018, counsel for defendants served to plaintiff, by regular U.S. Mail, defendants' requests for admissions regarding plaintiff's supplemental complaint, to which plaintiff has never responded. (Doc. 81-1, at ¶ 4; Doc. 81-3, at 29-33).

On February 22, 2017, Correctional Officer Mennen did not assault or threaten plaintiff in any fashion. (Doc. 81-1, at ¶ 5; Doc. 81-3, at 32, Request for Admission No. 12).

In April and May 2017, Correctional Officer Mennen did not assault plaintiff in any fashion. Mennen was merely escorting plaintiff to his cell for failure to voluntarily cooperate with jail staff. (Doc. 81-1, at ¶ 6; Doc. 81-3, at 32, Request for Admission No. 11).

In April 2017, plaintiff was placed in a separate cell due to failure to cooperate with jail staff, failure to follow jail rules, and continued assaultive behavior on jail staff. (Doc. 81-1, at ¶ 7; Doc. 81-3, at 32-33, Request for Admission No. 13).

In April 2017, plaintiff was at no time placed under any sort of unreasonable, unfair, or unsafe jail conditions, nor was he refused recreation, medical treatment, or medications. (Doc. 81-1, at ¶ 8; Doc. 81-3, at 32-33, Request for Admission No. 13).

---

[4] The clerk's office received the supplemental complaint on October 4, 2017, and it was filed on October 6, 2017. (Doc. 13).

On April 16, 2017, plaintiff was placed in a padded cell after he was observed having an episode which jailors were concerned might have been a suicide attempt. (Doc. 81-1, at ¶ 9; Doc. 81-3, at 26, 35).

On April 16-21, 2017, plaintiff was provided reasonable and necessary medical evaluation and care and access to his medications. (Doc. 81-1, at ¶ 10; Doc. 81-3, at 25-28, 34-41). He was also regularly provided reasonable and adequate meals and nutrition during this time. (Doc. 81-1, at ¶ 11; Doc. 81-3, at 25-28, 34-41).

Plaintiff was not subjected to inhumane or cruel conditions in the jail and was not placed in the padded cell for punitive or retaliatory reasons. (Doc. 81-1, at ¶ 12; Doc. 81-3, at 25-28, 33-41).

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting FED. R. CIV. P. 56(c)(2)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting

evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

When doing so, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . .." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "To survive a motion for summary judgment, the [nonmovant] must substantiate his [or her] allegations with sufficient probative evidence [that] would permit a finding in [his or her] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (third alteration in original) (internal quotation marks omitted) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). The nonmovant cannot simply rely on unsupported "self-serving allegations and denials . . . to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010); *accord Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016). The nonmovant must substantiate factual allegations with independent documentary evidence. *See Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013). Hence, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

## V. ANALYSIS

Defendants argue that they are entitled to summary judgment on the Remaining Claims because: (1) plaintiff did not properly exhaust his administrative remedies; (2) plaintiff's claims are frivolous, malicious and/or fail to state a claim upon which relief can be granted; (3) plaintiff's claims "are fatally vague and insufficient to establish constitutional violations" by defendants; (4) the individual defendants are entitled to qualified immunity; and (5) any potential claims against Sheriff Pals and Jail Administrator Steenblock fail to state a valid cause of action. (Doc. 81 & Doc. 81-2). Before addressing these issues, the Court will discuss the consequences of plaintiff's failure to resist defendants' motion.

### A. Plaintiff's Failure to Resist

As previously noted, plaintiff did not file a response to the motion for summary judgment. Nor did he request an extension of the resistance deadline. Pursuant to this Court's local rules, the motion may be granted for this reason without notice. *See* LR 7(f) ("If no timely resistance to a motion is filed, the motion may be granted without notice."); LR 56(c) ("If no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court. . . ."). Before granting the motion, however, the Court must consider whether defendants have met their burden of showing that summary judgment is appropriate. *See Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) (explaining that court must still determine that the moving party is entitled to judgment as a matter of law even if the nonmoving party did not oppose the moving party's contentions); *Johnson v. Boyd-Richardson Co.*, 650 F.2d 147, 149 (8th Cir. 1981) (requiring court to "inquire into the merits of [a motion to dismiss] and to grant or deny it, as the case may be, in accordance with the law and the relevant facts"); Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact

as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion, . . . grant summary judgment if the motion and supporting materials— including facts considered undisputed—show that the movant is entitled to relief . . . or . . . issue any other appropriate order").

Having reviewed the record, the Court concludes that it is appropriate to grant summary judgment in favor of defendants for the reasons stated in defendants' motion and brief. Defendants adequately set forth the law and apply such law to the undisputed material facts. Given plaintiff's failure to come forward with any evidence in response to the summary judgment motion, defendants are entitled to summary judgment with respect to the Remaining Claims. The record, even when viewed in the light most favorable to plaintiff, fails to establish a genuine issue of material fact with regard to whether plaintiff exhausted his administrative remedies and whether defendants violated plaintiff's constitutional rights.

## B.    *Exhaustion Requirement*

"No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (stating that "exhaustion in cases covered by § 1997e(a) is now mandatory"); *Washington v. Uner*, 273 F. App'x 575, 576-77 (8th Cir. 2008) (applying Section 1997e(a)). Proper exhaustion of administrative remedies is necessary so that corrections officials are afforded the "'time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter*, 534 U.S. at 525).

In their motion for summary judgment (Doc. 81 & Doc. 81-2), defendants assert that plaintiff did not properly exhaust his administrative remedies with respect to the Remaining Claims as 42 U.S.C. § 1997e(a) requires. *See Jones v. Bock*, 549 U.S. 199,

211-17 (stating that the failure to exhaust is an affirmative defense). In support, defendants submitted (1) the Cerro Gordo County Jail Inmate's Handbook, which includes information about the inmate grievance procedures (Doc. 81-3, at 7); (2) the Cerro Gordo County Jail Inmate Discipline/Grievance Program Policy and Procedure (*id.* at 42-49); and (3) the affidavit of Jail Administrator Steenblock, which verifies that plaintiff did not submit any grievances or complaints regarding the Remaining Claims (*id.* at 22-23) even though plaintiff

> was well-acquainted with the jail's grievance process as he, and all inmates, were provided access to the jail grievance policies and forms upon admission to the jail, and [plaintiff] in fact did submit various written grievances on other, unrelated matters during his long stay at the jail, which establishes that he was very familiar with the grievance process.

(*id.* at 24).

The record also demonstrates that plaintiff did not respond to defendants' Requests for Admissions; thus, these matters are deemed admitted pursuant to Federal Rule of Civil Procedure 36. Specifically, by failing to respond, plaintiff admitted that (1) he was familiar with the policies and procedures for submitting grievances or requests to the Cerro Gordo County Jail staff during his incarceration at the Jail (Doc. 81-3, at 30, Request for Admission No. 1); and (2) he never submitted any written grievance to the Cerro Gordo County Jail staff regarding any of the matters complained of in the supplemental complaint, "including but not limited to [his] complaints regarding alleged mistreatment by jail staff on or about February 22, 2017, April and May 2017, and April 16, 2017 through April 21, 2017." (*id.* at 32, Request for Admission No. 10).

The facts are undisputed that plaintiff failed to exhaust the administrative remedies that were available to him. *See Kendrick v. Pope*, 671 F.3d 686, 689 (8th Cir .2012) (finding that plaintiff failed to comply with 42 U.S.C. § 1997e(a)); *Johnson v. Jones*,

340 F.3d 624, 627 (8th Cir. 2003) (concluding dismissal is required when an inmate has not administratively exhausted before filing a lawsuit in district court).   As such, summary judgment in favor of defendants is warranted.

Alternatively, as discussed below, the undisputed facts do not establish that defendants violated any of plaintiff's constitutional rights.

### C.       Civil Rights Claims under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.   This statute was designed to provide "a broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978).   But 42 U.S.C. § 1983 provides no substantive rights.   *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).   "[O]ne cannot go into court and claim a 'violation of [42 U.S.C.] § 1983'—for [42 U.S.C.] § 1983 by itself does not protect anyone against anything."   *Chapman*, 441 U.S. at 617.   Rather, 42 U.S.C. § 1983 provides a remedy for violations of the "rights, privileges, or immunities secured by the Constitution and laws [of the United States]."   42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that 42 U.S.C. § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'"); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (noting that the phrase "Constitution and laws" means that 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statutes, as well as those created by the Constitution).   Thus, "[t]o state a claim under

[42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution [or] laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011) ("To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived plaintiff of a constitutionally protected federal right.").

In response to a claim under 42 U.S.C. § 1983, a defendant may assert the defense of qualified immunity. The Eighth Circuit has explained that:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.

*Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citations omitted). "The defense of qualified immunity gives government officials engaged in discretionary activities immunity from liability unless their conduct violates 'clearly established statutory or constitutional rights.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials are entitled to qualified immunity only to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999) (quoting *Harlow*, 457 U.S. at 818). "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'" *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335,

341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)) (internal quotation marks omitted). When analyzing qualified immunity, the Eighth Circuit has instructed district courts to conduct a two-part inquiry:

> The court must first consider the threshold inquiry of whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendants' conduct violated a constitutional right. If a constitutional right has not been violated, it is unnecessary to inquire further regarding qualified immunity. If a violation could be established on the facts alleged, the second inquiry is whether the right was clearly established at the time the violation occurred.

*Id.* (citations omitted); *accord Smith v. City of Minneapolis*, 754 F.3d 541, 545-46 (8th Cir. 2014).

### D.    Merits of Plaintiff's Excessive Use of Force Claims

The Eighth Amendment protects inmates from unnecessary and wanton infliction of pain by correctional officers. *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002). Officers are permitted to use force reasonably in a good-faith effort to maintain or restore discipline, as long as they do not use force maliciously and sadistically to cause harm. *Id.* In deciding whether a particular use of force was reasonable, the court considers whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by correctional officers, the efforts by the officers to temper the severity of the forceful response and the extent of the inmate's injuries. *Id.*; *see, e.g.*, *Jasper v. Thalacker*, 999 F.2d 353 (8th Cir. 1993) (holding that employment of a stun gun to subdue a prisoner who had verbally threatened and then lunged at a prison official did not constitute the use of excessive force).

The Court reviewed plaintiff's pleadings, the law that is applicable to plaintiff's claims and the statement of undisputed material facts, which are deemed admitted by plaintiff. Based on that review, the Court finds that plaintiff's claims rest on

12

unsubstantiated allegations and that defendants are entitled to summary judgment with respect to the excessive use of force claims alleged in the supplemental complaint.[5]

The undisputed evidence is that plaintiff was frequently disruptive and combative with Jail staff and that plaintiff's own conduct made it necessary for prison officials to physically escort him to his cell after he refused orders to return on his own. Indeed, plaintiff admitted that: (1) any physical contact by and between plaintiff and any of defendants occurred only as a direct result of plaintiff's failure to follow Jail staff's directions or instructions and/or plaintiff's uncooperative and aggressive behavior towards Jail staff; and (2) any physical force applied by Jail staff was reasonable, lawful and appropriate and was necessitated by plaintiff's failure to follow Jail staff's instructions and/or plaintiff's "aggressive and physically assaulted behavior" towards Jail staff. (Doc. 81-3, at 30-32, Request for Admission Nos. 2, 3, 4 & 9). Specifically with respect to Correctional Officer Mennen, there is no evidence that he assaulted or threatened plaintiff on February 22, 2017, or that he assaulted plaintiff in April or May 2017, when he was escorting plaintiff to his cell for plaintiff's failure to voluntarily cooperate with Jail staff. (Doc. 81-1, at ¶¶ 5-6; Doc. 81-3, at 32, Request for Admission Nos. 11 & 12). Plaintiff has also failed to present any evidence substantiating his claim that Mennen used excessive force on plaintiff during a van transport to the Iowa Medical Classification Center.

As a matter of law, there is nothing inhumane or wanton about enforcing reasonable prison regulations and orders. *See Stenzel v. Ellis*, 916 F.2d 423, 428 (8th Cir. 1990). As the Seventh Circuit aptly stated:

> Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. . . . Inmates are and

---

[5] Plaintiff's excessive use of force claims in the supplemental complaint (Doc. 13) appear to focus solely on Correctional Officer Mennen's conduct.

must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.

*Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009); *see also Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) (pepper-spraying an inmate who disobeyed orders and engaged in aggressive acts of defiance was not a case where "a complete absence of a penological purpose" raised "the reasonable inference that the officers acted maliciously in an effort to cause harm"). Although plaintiff may not have welcomed being physically escorted to his cell or being restrained during a van transport, he has failed to demonstrate that the unwelcome contact amounted to unnecessary and wanton infliction of pain. *See Berryhill v. Schriro*, 137 F.3d 1073, 1076-77 (8th Cir. 1998) (concluding that plaintiff failed to demonstrate that unwelcome touches amounted to unnecessary and wanton infliction of pain).

In light of these undisputed facts, the Court concludes that no reasonable jury could find that Correctional Officer Mennen (or any of the other defendants) used excessive force in violation of the Eighth Amendment with respect to the incidents detailed in the supplemental complaint. The evidence, viewed in the light most favorable to plaintiff, reveals a use of force by defendants that was commensurate with the situation with which they were confronted and which was employed in a good faith effort to maintain or restore discipline and to ensure the safety of others. Accordingly, defendants are entitled to summary judgment on plaintiff's excessive force claims set forth in the supplemental complaint.

### E.   Merits of Plaintiff's Retaliation Claims

The record does not establish that plaintiff's placement in a separate, individual cell and a padded cell amounted to unconstitutional retaliation. "To prevail on a retaliation claim, [a plaintiff] must show 1) he engaged in a protected expression, 2) he

suffered an adverse action, and 3) the adverse action was causally related to the protected expression." *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004)).  An inmate claiming retaliation is required to meet a substantial burden of proving the actual motivating factor for the adverse action is as alleged.  *See Griggs v. Norris*, 297 Fed. App'x. 553, 555 (8th Cir. 2008); *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996); *Goff v. Burton*, 7 F.3d 734, 736-38 (8th Cir. 1993); *see also Haynes v. Stephenson*, 588 F.3d 1152, 1155-57 (8th Cir. 2009) (discussing prima facie case of retaliatory discipline).  "Merely alleging that an act was retaliatory is insufficient." *Meuir v. Green Cnty. Jail Emp.*, 487 F.3d 1115, 1119 (8th Cir. 2007).

Here, the record does not support a finding that, but for an unconstitutional, retaliatory motive, plaintiff's placement in a separate cell and a padded cell would not have occurred.  Indeed, the record reveals that plaintiff was placed in a separate cell due to failure to cooperate with jail staff, failure to follow jail rules, and continued assaultive behavior on jail staff.  (Doc. 81-1, at ¶ 7; Doc. 81-3, at 32-33, Request for Admission No. 13).  There is no evidence that plaintiff was placed in a separate cell for engaging in a protected activity.  The evidence also shows that, on April 16, 2017, plaintiff was placed in a padded cell after jail staff observed him having an episode that they thought might have been a suicide attempt; he was not placed in a padded cell for punitive or retaliatory reasons.  (Doc. 81-1, at ¶¶ 9, 12; Doc. 81-3, at 25-28, 33-41).  Based on this record, the Court finds defendants are entitled to summary judgment on plaintiff's retaliation claims.

### F.    Merits of Plaintiff's Cruel and Unusual Punishment and Conditions of Confinement Claims

The record also does not establish that plaintiff's placement in a separate cell and a padded cell amounted to cruel and unusual punishment.

It is well-settled that "[t]he Eighth Amendment scrutinizes the conditions under which prison inmates are confined in order to prevent the inhumane treatment of inmates."[6] *Robinson v. Hager*, 292 F.3d 560, 563 (8th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 345-47 (1981) (the Eighth Amendment's prohibition against "cruel and unusual punishment" applies to conditions of confinement). A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Thus, a defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Moreover, the defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 835. Accordingly, to prevail on an Eighth Amendment claim of deliberate indifference, an inmate must prove that (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk. *Robinson*, 292 F.3d at 564;

---

[6] Because plaintiff was a pretrial detainee, his claims are analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)); *see also Smith v. Copeland*, 87 F.3d 265, 268 n.4 (8th Cir. 1996) (stating burden to establish constitutional violations is lighter for pretrial detainees than for convicted prisoners (citing *Bell*, 441 U.S. at 535 n.16). The Eighth Circuit Court of Appeals has repeatedly applied the same "deliberate indifference" standard as is applied to Eighth Amendment claims made by convicted inmates. *See Vaughn v. Greene Cnty.*, 438 F.3d 845, 850 (8th Cir. 2006); *Owens*, 328 F.3d at 1027; *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 957 (8th Cir. 1994).

16

*Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997); *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993).

The undisputed evidence establishes that plaintiff was not subjected to any sort of unreasonable, unfair, or unsafe jail conditions, nor was he refused recreation, medical treatment, or medications in April 2017. (Doc. 81-1, at ¶ 8; Doc. 81-3, at 25, 32-33, Request for Admission No. 13, 34-41). Specifically, the Offender Log Report shows that, from April 16-20, he was provided reasonable and necessary medical evaluation and care and access to his medications. (Doc. 81-1, at ¶¶ 9-10; Doc. 81-3, at 25-28, 34-41). Plaintiff was also regularly provided reasonable and adequate meals and nutrition during this time. (Doc. 81-1, at ¶ 11; Doc. 81-3, at 25-28, 34-41). In his second affidavit (Doc. 81-3, at 25-28), Jail Administrator Steenblock accurately summarized the entries in the Offender Log Report from April 16-20, 2017:

> [T]he jail staff responded to a call from the button in [plaintiff's] cell at approximately 19:50 hours on 4/16/17. At that time, Correctional Officer Munro heard a faint noise that sounded like possibly the inmate was choking, and he observed [plaintiff] in the cell having what appeared to be a seizure. Munro immediately summoned assistance and [plaintiff] was transferred to another cell. Officers then searched [plaintiff's] cell and located several pills in his cell. [Plaintiff] was subsequently transferred to the padded cell due to this incident appearing like it may have been a suicide attempt. Contrary to claims in his lawsuit, [plaintiff] was not transferred to the padded cell as punishment or retaliation for anything, but rather because it permitted the jail staff to continuously keep him under closer observation. Jail staff examined [plaintiff], took his blood pressure, and continued to closely monitor his condition over the next several days. Several jail staff also noted that [plaintiff] was very emotional during and following the incident of April 16th. Correctional officers also notice[d] during their search of [plaintiff's] cell following the incident, that he had placed tissue paper over the camera in his cell prior to the incident.

> The Offender Log Report reflects that jail staff continued to closely monitor [plaintiff's] condition over the next several days. As reflected by an entry on 4/17/17 at 04:30, CO Beaver checked on [plaintiff's] status

after he noticed that he was not moving in his cell. [Plaintiff] complained that his head and chest were hurting, and CO Berman conducted an assessment, including taking [plaintiff's] blood pressure. He also advised [plaintiff] that he would obtain some over the counter pain medication for him soon during medication passes. Later that afternoon, Officer Buland checked on [plaintiff's] status and it appeared that he may have been having some sort of allergic reaction. He was transferred to the emergency room at approximately 14:35 hours, where he was evaluated for a possible allergic reaction to medication. After being evaluated by emergency room staff, he was transferred back to the jail. After his return to jail, and as again, reflected by the Offender Log Report, jail staff continued to closely monitor his condition.

Contrary to [plaintiff's] assertions in his lawsuit, he was never denied any request for medical treatment, nor was he ever denied his medications. In fact, the log report clearly reflects the opposite. For example, on 4/17/17, at approximately 22:15 hours, CO Tiedemann was attempting to give [plaintiff] his medications and [plaintiff] refused one medication and insisted on a different one. He was given the other requested medication, and then responded to the correctional officer with profanity. [Plaintiff] then attempted to spit on CO Tiedemann, and attempted to reach through the door to grab Tiedemann.

Also contrary to [plaintiff's] claims in his lawsuit, he was regularly provided with adequate water and food throughout the time he was kept in the padded cell. There are numerous entries in the jail log confirming that he was provided with adequate meals and nourishment throughout the period of the days that he was in the padded cell. Additionally, he was permitted to visit the jail nurse during this period of incarceration, was permitted to use the telephone, and was provided access to writing materials. Additionally, he was periodically provided access [to] the shower room.

In summary, [plaintiff] was placed in the padded cell by jail staff because of concerns over what appeared to have been a suicide attempt on his part, whereupon he was closely monitored by jail staff for the next several days. As confirmed by the Offender Log Report, during the period of time that he was kept in the padded cell, he was constantly under staff observation, and was at all times provided with reasonable and adequate nourishment, medical evaluation and care, medication, and the conditions

of his confinement were absolutely reasonable and appropriate for safety and security, and for his own benefit. Finally, as reflected by the Offender Log Report on 4/20/17 at 16:16 hours he was transferred from the padded cell back to a regular, individual cell, once jail staff was assured he was reasonably in a physical and mental condition where he could be transferred to an individual cell.

(*id.* at 26-28).

The record thus establishes that, during plaintiff's placement in a separate cell and a padded cell, defendants did not deprive plaintiff of the "minimal civilized measure of life's necessities," *Rhodes*, 452 U.S. at 347, nor were they deliberately indifferent to plaintiff's health or safety. To the contrary, the evidence demonstrates that defendants were aware of plaintiff's mental health and medical problems and closely monitored and treated them. In addition, plaintiff's bare allegation of excessive illumination, without any evidentiary support, is insufficient to support a claim of cruel and unusual punishment. *See Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650 (8th Cir. 1996) (holding that pre-trial confinement for fourteen days in constant illumination did not constitute punishment in violation of Due Process); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (the continuous lighting in the holding cell was not unreasonable given the need for jail security and the need to monitor the inmate); *Hutchings v. Corum*, 501 F. Supp. 1276, 1293 (W.D. Mo. 1980) (no constitutional violation despite all-night illumination and high noise level at night, where inmates failed to allege "evidence indicating that the inmates are unable to sleep at all or that they have developed psychological or physiological problems"); *compare Shepherd v. Ault*, 982 F. Supp. 643, 647 (N.D. Iowa 1997) (motion for summary judgment denied where one inmate had spent 283 nights in disciplinary detention under constant illumination). Even assuming the lights were illuminated in plaintiff's cell during the period from April 16-20, 2017, the Offender Log Report indicates that plaintiff was nevertheless able to sleep. (Doc. 81-3, at 34-41).

In light of this undisputed evidence, the Court finds that defendants are entitled to summary judgment on plaintiff's cruel and unusual punishment and conditions of confinement claims.

### G.  Defendants Steenblock and Sheriff Pals

To the extent the Remaining Claims are construed as claims against Jail Administrator Steenblock and Sheriff Pals, these claims are dismissed.  Jail administrators and supervisors, such as Steenblock and Sheriff Pals, cannot be held liable under Section 1983 on a theory of respondeat superior.  *See, e.g.*, *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Choate*, 7 F.3d at 1376.  Supervisors can, however, "incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Langford*, 614 F.3d at 460 (internal quotation marks and citation omitted) (quoting *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990), and *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)).

Because the evidence shows there were no constitutional violations by Mennen or other Jail staff defendants with respect to the Remaining Claims in the supplemental complaint, plaintiff has failed to state a claim for relief against Steenblock or Sheriff Pals with respect to those same claims.

### H.  Qualified Immunity

Having concluded that the record fails to establish a genuine issue of material fact as to whether plaintiff exhausted his administrative remedies and whether the individual defendants violated plaintiff's constitutional rights, the Court finds that it is not necessary to engage in a lengthy discussion of defendants' qualified immunity defense. Nonetheless, the Court notes that qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," *Malley*, 475 U.S. at 341.  The Court concludes that the summary judgment record does not establish that it would have

been clear to a reasonable person that defendants' conduct was unlawful in the situation that they confronted. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). As such, the Court finds that qualified immunity provides an additional, alternative basis for recommending the entry of summary judgment in favor of the individual defendants.

## VI.     CONCLUSION

IT IS **ORDERED**:

(1)     Defendants' second motion for summary judgment (Doc. 81) is **GRANTED**.

(2)     The clerk's office is **DIRECTED** to enter judgment in favor of defendants on plaintiff's claims in the supplemental complaint. (Doc. 13).

(3)     The clerk's office is directed to close this case.

**IT IS SO ORDERED** this 3rd day of January, 2019.


_____
C.J. Williams
United States District Judge
Northern District of Iowa